**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

September 28, 2026

Seth Ptasiewicz
Kroll Heineman Ptasiewicz & Parsons LLC
91 Fieldcrest Avenue
Suite 35
Edison, NJ 08837
*Counsel for Petitioner*

Stewart M. Leviss
Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross LLP
75 Livingston Avenue
Roseland, NJ 07068
*Counsel for Respondent*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

**Re:** ***Eastern Atlantic States Carpenters Fund v. San Mart Corp., Civ. No. 26-2074 (SDW) (JBC)***

Counsel:

Before this Court is Respondent San Mart Corp.'s ("San Mart" or "Respondent") Motion to Vacate the Arbitration Award entered on December 30, 2025 in favor of Petitioner Eastern Atlantic States Carpenters Funds (the "Funds" or "Petitioner). (D.E. 6.) Also before this Court is Petitioner's Motion to Confirm the Arbitration Award. (D.E. 2.) Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1441. This Opinion is issued without oral argument pursuant to Rule 78. For the reasons set forth herein, Respondent's Motion to Vacate the Arbitration Award is **GRANTED**. Petitioner's Motion to Confirm the Arbitration Award is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. The History of San Mart Corp.

The original San Mart Corp. (the "old San Mart") is believed to have been formed in the 1970s and operated a business designing, selling, and installing conveyor systems. (D.E. 7 at 5.) San Mart's owner also owned another company, Boyson, which provided the same services. (*Id.*) By the end of 1986, the old San Mart ceased operations. (*Id.* at 6.) Between 1986 and 1995, San Mart had no employees and conducted no business, existing only as a corporate shell. David Houtman ("Houtman"), San Mart's current president and sole shareholder, worked at the old San Mart before it closed. (*Id.*)

In late 1994 or early 1995, Houtman started his conveyor-services company under the San Mart name (the "new San Mart"). (*Id.*) To acquire the dormant San Mart name for his new business, Houtman purchased the shares of old San Mart from its prior owner, even though the old San Mart had no assets at that time other than its name. (*Id.*)

The new San Mart did not use any of the old San Mart's equipment and did not operate from the same location. (*Id.*) When Houtman opened new bank accounts and retained a payroll service for the new San Mart, those accounts and services did not overlap with the old San Mart's. (*Id.* at 6–7.) Houtman hired six or seven employees for the new San Mart, and because old San Mart had closed nearly ten years earlier, none of those employees had worked for the old San Mart when the new San Mart began operations. (*Id.* at 7.)

### B. The Short Form Agreement ("SFA") and Collective Bargaining Agreement ("CBA")

On February 1, 1984, the old San Mart entered into a Short Form Agreement with the New Jersey State Council of Carpenters. (D.E. 11 at 7; D.E. 1 at 59.) As relevant here, the SFA provides that San Mart agrees to be "bound by ever current collective bargaining agreements between the Local Unions or District Councils and the largest contractor association governing wages . . ." and that the SFA will be deemed renewed unless either party provides written notice of cancellation. (D.E. 1 at 59.) The SFA incorporated the then-current CBA, which included an arbitration clause providing the parties with expedited arbitration for wage or fringe benefit disputes. (*Id.* at 28.) In addition, the Amended and Supplemental Agreement to the CBA provided that the Funds may require San Mart to furnish payroll information and reports as necessary for the performance of the Funds' duties. (*Id.* at 63.)

### C. The Funds' Attempts to Enforce the CBA

[1] The facts recited here are drawn from the Petition to Confirm Arbitration Award and its accompanying Exhibits (D.E. 1), Respondent's Brief in Support of its Motion to Vacate (D.E. 7), and Petitioner's Brief in Opposition to the Motion to Vacate (D.E. 11.)

In 2002, Houtman received a request to audit San Mart's financial information, based upon a collective bargaining agreement that old San Mart had entered in the 1980s. (D.E. 7 at 7.) Houtman's counsel responded, and the matter went no further. (*Id.* at 7–8.) Seventeen years later, in 2019, Northeast Carpenters Funds contacted Houtman seeking access to new San Mart's financial records. (*Id.* at 8.) Counsel for new San Mart explained the history of old and new San Mart and advised that the Funds' CBA did not apply to new San Mart because it was not a signatory. (*Id.*) After that correspondence, Houtman heard nothing further, and no audit or arbitration occurred. (*Id.*) In May 2021, Houtman received the same request again from Northeast Carpenters Funds[2]. (*Id.*) As in 2019, counsel for new San Mart reiterated that the new San Mart had not entered, and had not agreed to be bound by, any CBA and therefore was not subject to an audit. (*Id.*) Houtman again received no further response. (*Id.*)

D. Procedural History

On December 30, 2025, the Funds submitted the audit demand to J.J. Pierson, the designated arbitrator for determination of the Funds' contribution disputes. (D.E. 11 at 10.) San Mart did not appear at the hearing. (*Id.*) After noting that San Mart had received "due notice" of the hearing and determining that San Mart was bound by the CBA, the arbitrator directed San Mart to submit to a Funds audit by producing "any and all documents deemed relevant in determining the financial status of the Employer by the Trustees of the Funds." (D.E. 1 at 73–74.)

Counsel for the Funds served the arbitration award by first class and certified mail on January 6, 2026. (D.E. 11 at 10.) The letter advised that, absent a response from San Mart, the Funds would file a petition to confirm the award. (*Id.* at 10–11.) On February 27, 2026, the Funds filed the Motion to Confirm Arbitration Award (D.E. 2), and on March 24, 2026, San Mart moved to vacate the award. (D.E. 6.) Timely briefing ensued, and the issues are now ripe for adjudication. (D.E. 11, 14.)

## II. LEGAL STANDARD

"There is a strong presumption under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "On application for an order confirming [an] arbitration award, [a] court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in [the FAA].'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (quoting 9 U.S.C. § 9). A district court conducts its review "under an 'extremely deferential standard,' the application of which 'is generally to affirm easily the arbitration award.'" *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).

---

[2] The Funds are the successor to Northeast Carpenters Funds. (D.E. 1 at 73.)

As "courts accord arbitration decisions exceptional deference," a party seeking to vacate an award bears the "heavy burden" of proving that the award at issue should be overturned. *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d Cir. 2010) (citing *Dluhos*, 321 F.3d at 370)). Under the FAA, there are four grounds upon which an arbitration award may be vacated:

1. Where the award was procured by corruption, fraud, or undue means;
2. Where there was evident partiality or corruption in the arbitrators . . .;
3. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
4. Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In cases involving a collective bargaining agreement, generally, a court will "only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (quoting *News Am. Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Loc. 103*, 918 F.2d 21, 24 (3d Cir. 1990)).

## III. <u>DISCUSSION</u>

In support of its Motion to Vacate the Arbitration Award, San Mart argues that a contract to arbitrate was never formed because successor liability does not apply, as in there is no link between the old and new San Mart. (D.E. 7 at 12–17.) San Mart contends that the old San Mart is the entity that executed the SFA and adopted the CBA, not the new San Mart. (*Id.* at 16.) The parties dispute whether this Court or the arbitrator must decide issues of arbitrability, and relatedly, whether new San Mart is a successor bound by the CBA's arbitration provisions. (*Id.* at 9–12; D.E. 11 at 11–14.) In response, the Funds contend that the Motion to Vacate should be denied because a challenge to the validity of the contract as a whole, rather than a challenge directed specifically to the arbitration clause, must be decided by the arbitrator. (D.E. 11 at 11–14.) The Funds further argue that San Mart cannot establish fraud in the execution, and that any challenges to the SFA must go before the arbitrator. (*Id.* at 14–17.)

### A. <u>Threshold Issue of Arbitrability</u>

Challenges to contract formation are for the court to decide unless the parties clearly agreed otherwise in an agreement whose formation is not itself disputed. *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 392 (3d Cir. 2020); *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013). An arbitration clause cannot confer jurisdiction on an arbitrator where the parties never entered into the contract containing that clause. *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.,* 334 F.3d 274, 288 (3d Cir. 2003). By contrast, if the dispute concerns the validity of the contract, the arbitrator decides those issues because an arbitration clause is severable from the contract and may be independently enforced.

*MZM*, 974 F.3d at 397 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967)).

Here, San Mart contends that no enforceable agreement to arbitrate was formed as to it because successor liability does not apply, and thus the award in the Funds' favor cannot stand. (*See* D.E. 7 at 12–17.) San Mart does not dispute that the SFA was executed but argues that it was executed by the old San Mart and is not binding on the new San Mart because there is no predecessor-successor relationship between the two entities. (*Id.*) Because San Mart's challenge goes directly to contract formation, this Court will address the issue. *SBRMCOA, LLC*, 707 F.3d at 271.

B. Successor Liability

An unconsenting successor employer generally is not bound by the substantive terms of its predecessor's collective bargaining agreement absent an express or implied assumption of those obligations, or a finding that the successor is the predecessor's "alter ego." *AmeriSteel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d 264, 273 (3d Cir. 2001); *N. L. R. B. v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 281 (1972).

Whether an employer qualifies as a "successor" turns on whether there is "substantial continuity" between the predecessor and successor businesses. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 43 (1987). This inquiry is fact-intensive. Courts first consider whether there is continuity of the workforce and then whether business has continued without substantial change. *Sys. Mgmt., Inc. v. N.L.R.B.*, 901 F.2d 297, 301–02 (3d Cir. 1990). As a threshold matter, the "successor employer" status attaches only when the new employer hires a majority of the predecessor's employees.[3] *Id.* at 302 (quoting *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 263 (1974)).

To satisfy the business-continuity prong, the successor must continue essentially the same business operations as the predecessor. *Id.* at 303. In this analysis, courts often consider seven factors: (1) whether there is substantial continuity of the same business operation; (2) whether the new employer uses the same plant or equipment; (3) whether the same or substantially the same work force is employed; (4) whether the same jobs exist under the same working conditions; (5) whether the same supervisors are employed; (6) whether the same machinery, equipment, and methods of production are utilized; and (7) whether the same product is manufactured or the same service is offered. *Id.* at 303–304. Courts also give particular weight to whether, from the employees' perspective, their jobs materially changed. *Fall River Dyeing*, 482 U.S. at 44. Ultimately, the "substantial continuity" analysis considers the totality of the circumstances, focusing on whether the new company has acquired substantial assets of its predecessor and

[3] *Burns* articulates the test slightly differently—whether a majority of the employes hired by the new employer were employees of the predecessor business. *Burns*, 406 U.S. at 281. This distinction does not materially affect the analysis here.

continued the predecessor's business operations. *Id.* at 43 (quoting *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 184 (1973)).

Here, as to workforce continuity, Respondent alleges that the new San Mart hired "six or seven" Boyson employees but does not state whether any of those individuals previously worked for old San Mart or whether "six or seven would have constituted a majority of old San Mart's workforce. (D.E. 7 at 7.) In his Affidavit, Houtman states that he created and built the new San Mart without using the old San Mart's employees, business location, or contractual relationships at the time old San Mart ceased operations. (D.E. 8 ¶ 17.) Although the record is not clear as to the precise size of the workforces at old and new San Mart, this Court also considers the lapse of time between the formation of the two entities and whether, under the totality of the circumstances, workforce continuity exists.

The parties do not dispute that the old San Mart was dormant for nine years before Houtman began operating the new San Mart. (D.E. 7 at 6.) That extended hiatus is sufficient to break continuity—even assuming some Boyson employees had previously worked for the old San Mart, a nine-year gap makes it unlikely that their employment could be viewed as continuous. By comparison, courts have found substantially shorter interruptions insufficient to defeat successor employer status—thirteen months in *N.L.R.B. v. Phoenix Pipe & Tube, L.P.*, 955 F.2d 852, 857 (3d Cir. 1991) and seven months in *Fall River Dyeing*, 482 U.S. at 58. The nine-year hiatus here is significantly longer and supports a finding that workforce continuity was broken.

Moreover, other indicia of discontinuity make the nine-year hiatus even more significant. San Mart alleges that when it began operations, the old San Mart had no assets other than its name, and that Houtman paid only ten dollars for San Mart's name and shares. (D.E. 7 at 6.) San Mart further alleges that although it operated in the conveyor service industry like the old San Mart, it did not use any of the same equipment as the old San Mart or operate from any location previously utilized by the old San Mart. (*Id.*) Respondent also alleges that the new San Mart did not share any bank accounts or payroll service accounts with its former version. (*Id.*) Since the old San Mart had no employees by the time the new San Mart began, there could be no continuity from the employees' perspective.

The Funds do not contend that these indicia are inaccurate. Instead, the Funds incorrectly construe Respondent's challenge as one of contract validity[4] and argue that San Mart cannot establish fraud in the execution—an argument San Mart does not raise and is not at issue here. (D.E. 11 at 11–17.) The Funds address the successor liability argument only briefly, contending that a successor relationship exists because the new San Mart retained the same name and continued operating in the same industry. (*Id.* at 13–14.) Although the Funds characterize San Mart's challenge as an attack on the CBA signatory's authority, the real dispute is whether the

[4] The Funds contend that because the challenge goes to the validity of the contract as a whole, rather than specifically to the arbitration clause, any substantive disputes about the SFA must be decided by the arbitrator. (D.E. 11 at 12.) San Mart's challenge, however, raises the threshold issue of whether any agreement was formed at all with respect to the new San Mart.

signature that bound the old San Mart also binds the new San Mart as its successor. (*Id.* at 12–13.) Accordingly, under the totality of the circumstances, the record weighs against finding that the new San Mart is a successor employer to the old San Mart.

C. Effect of the Arbitration Award

As the Funds have noted, arbitrator J.J. Pierson conducted a hearing on December 30, 2025, after San Mart was served with notice but failed to appear[5]. (D.E. 11 at 10.) The arbitrator concluded that San Mart was bound by the CBA with the Funds and ordered San Mart to submit to an audit of its financial records for 2021 through 2024. (*Id.*; D.E. 1 at 73.) The arbitrator also directed San Mart to make all future contributions to the Funds in accordance with the CBA. (D.E. 1 at 74.)

An arbitration award is unenforceable against a party that is not bound by the underlying CBA. *See AmeriSteel Corp.*, 267 F.3d at 274. If a successor cannot be bound by the predecessor's CBA, arbitration under that agreement is improper because any award in the union's favor could not receive judicial sanction. *Id.* (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555 (1964)). Here, this Court has concluded that it has authority to decide challenges to contract formation and that new San Mart is not a successor employer to the old San Mart. Accordingly, new San Mart is not bound by the CBA. Because the arbitrator exceeded his powers by exercising jurisdiction over a party not bound by the CBA, the arbitration award is vacated under 9 U.S.C. § 10(a)(4).

D. Remand to the Arbitrator

A remand for further arbitration is warranted only in limited circumstances, such as when an award is incomplete or ambiguous. *United Steelworkers of Am., Dist. 36, Loc. 8249 v. Adbill Mgmt. Corp.*, 754 F.2d 138, 141 (3d Cir. 1985). Here, remand is not appropriate because San Mart cannot be compelled to arbitrate in the first instance, as it is not bound by the CBA. In any event, the award is neither incomplete nor ambiguous.

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion to Vacate Arbitration Award is **GRANTED** and Petitioner's Motion to Confirm Arbitration Award is **DENIED**. This case shall be closed. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

[5] San Mart offers no explanation for its failure to appear at the arbitration hearing or for its initial failure to respond after the Funds served notice of their arbitration demand.

Orig: Clerk
cc: Parties
James B. Clark, U.S.M.J.